QUALCHOICE, INCORPORATED, Plaintiff–Appellant,

v.

Joseph WILLIAMS, Defendant– Appellee.

No. 00–3485.

United States Court of Appeals, Sixth Circuit.

June 22, 2001.

418

Before RALPH B. GUY, JR., NORRIS, and GILMAN, Circuit Judges.

PER CURIAM.

Plaintiff, QualChoice, Inc., appeals from the entry of summary judgment in favor of the defendant, Joseph Williams. Plaintiff, as fiduciary and administrator of the Lincoln Electric Employee Benefit Plan, brought suit for specific performance and restitution under the subrogation and reimbursement provisions of the Plan. Plaintiff contends that the district court erroneously concluded that the right to reimbursement for medical expenses paid on behalf of Williams was barred by the make-whole doctrine. After review of the record and the applicable authority, we find no error and affirm.

## I.

Joseph Williams, a covered employee under the Plan, was injured in a motor vehicle accident on October 7, 1996. Plaintiff paid accident-related medical expenses for Williams totaling $75,187.93. Williams also incurred $9,149 in wage losses. Williams and his wife settled their claims against the party responsible for the accident for a sum of $115,000. Of that amount, $38,000 was allocated to the wife's loss of consortium claim. Plaintiff concedes that the remaining $77,000 did not wholly compensate Williams for his injuries. Plaintiff nonetheless seeks reimbursement from the $77,000.

QualChoice filed this action in March 1999, seeking enforcement of the Plan's subrogation and reimbursement provisions pursuant to 29 U.S.C. § 1132(a)(3)(B)(ii). The summary plan description sets forth the Plan's rights under "Section Sixteen: Subrogation," which states in pertinent part:

You agree to protect our lien rights if you are injured or become ill through

the act of a third party. If you are due money from such third party for the cost of such Covered Services, we will be subrogated for you for the purpose of collecting for those Covered Services. We will have the right to bring suit against such third party in your name to the extent permitted by applicable state law. *If you receive payment, however designated, from a third party, you are obligated to reimburse us, less our pro rata share of the reasonable attorneys' fees and costs you sustained in obtaining such recovery.*

(Emphasis added.) With the consent of the parties, the case was transferred to the magistrate judge for final hearing and disposition pursuant to 28 U.S.C. § 636(c). On cross motions for summary judgment, the magistrate judge identified the "pivotal issue" to be "whether the federal common law make[-]whole doctrine applies to vitiate any obligation of the defendant to reimburse the Plan for medical expenses paid on his behalf." Interpreting this court's unpublished decision in *Marshall v. Employers Health Insurance Co.*, Nos. 96–6063/96–6112, 1997 WL 809997 (6th Cir. Dec.30, 1997), the judge found the reimbursement language was ambiguous and, as a result, the make-whole rule applied to bar the Plan's claim for reimbursement in this case. Judgment was entered in favor of defendant and plaintiff appealed.

## II.

We review the district court's grant of summary judgment *de novo. See, e.g., Smith v. Ameritech*, 129 F.3d 857, 863 (6th Cir.1997). Moreover, as the parties indicate, the interpretation of the Plan's reimbursement provision is reviewed *de novo. See Copeland Oaks v. Haupt*, 209 F.3d 811, 813 (6th Cir.2000). This court, following the lead of the Ninth and Eleventh Circuits, adopted the make-whole rule of federal common law, which "requires that an insured be made whole before an insur-

er can enforce its right to subrogation under ERISA, unless there is a clear contractual provision to the contrary." *Copeland Oaks*, 209 F.3d at 813. *See also Cagle v. Bruner*, 112 F.3d 1510 (11th Cir. 1997); *Barnes v. Indep. Auto. Dealers of Cal. Health and Welfare Benefit Plan*, 64 F.3d 1389 (9th Cir.1995).

Such a rule is consistent with the equitable principle that [an] insurer does not have a right of subrogation until the insured has been fully compensated, unless the agreement itself provides to the contrary. Also, the make-whole rule is merely a default rule. If a plan sets out the extent of the subrogation right or states that the participant's right to be made whole is superceded by the plan's subrogation right no silence or ambiguity exists.

*Marshall*, 1997 WL 809997, at *4. The panel in *Marshall* found the subrogation provision to be ambiguous and therefore subject to the make-whole rule. Because the separate reimbursement clause was *un* ambiguous, however, the beneficiary was required to reimburse the plan. The court explained that since subrogation and reimbursement are distinct rights, it was not necessary for them to be treated the same.

The magistrate judge concluded that Section Sixteen's reimbursement language was ambiguous, reasoning that:

What distinguishes *Marshall* from this case is that the reimbursement language therein was in a separate paragraph from the subrogation language, each with headings which clearly identified them as "Subrogation" and "Reimbursement," whereas the summary plan language at issue in this case is found within the provision labeled "Subrogation," with no indication of any intent to separate the concepts. In this Court's opinion this creates an ambiguity sufficient to warrant application of the

make[-]whole doctrine to the reimbursement obligation found within the subrogation clause in the present case. Consequently, the defendant would have no obligation to reimburse the Plan unless he had been made whole for the injuries he sustained.

QualChoice argues on appeal that the judge erred (1) by finding ambiguity based on the absence of a separate heading for the reimbursement provision and (2) by concluding that the make-whole rule applies to both subrogation and reimbursement rights. Our decision is controlled by two recently published decisions of this court concerning the make-whole default rule in the ERISA context.

In *Copeland Oaks*, the court drew upon *Marshall* and held that "in order for plan language to conclusively disavow the default rule, it must be specific and clear in establishing *both* a priority to the funds recovered *and* a right to any full or partial recovery." *Copeland Oaks*, 209 F.3d at 813 (emphasis in original). In that case, the subrogation and reimbursement rights, which were set forth in a single provision, granted the plan priority over "any" funds paid by a third party. That was not sufficient to avoid the default rule because the language failed to specify that the rights to subrogation and refund had priority over even a *partial* recovery. As a result, the district court was found to have properly applied the make-whole rule.[1]

In *Hiney Printing Co. v. Brantner*, 243 F.3d 956 (6th Cir.2001), the court applied the holding in *Copeland Oaks* to find that separate subrogation and reimbursement provisions were ambiguous because they failed to clearly establish a right to priority over a *partial* recovery from a third party. As a result, the make-whole rule was applied to both the subrogation and reimbursement provisions. The court in *Hiney* specifically rejected the argument that the make-whole rule does not apply to reimbursement provisions, stating:

> While subrogation and reimbursement are distinct doctrines, we see no principled reason for treating them differently when it comes to the default application of the make-whole rule to ambiguous provisions. Indeed, the provision at issue in *Copeland Oaks*, while designated a subrogation clause, addressed both a right of subrogation and a right of reimbursement. *See Copeland Oaks*, 209 F.3d at 811 ("Part of the subrogation clause of the Plan provides: The Covered Person agrees to recognize the Plan's right to subrogation and reimbursement. These rights provide the Plan with priority over any funds paid by a third party to a Covered Person ...."). Nor is the holding of *Copeland Oaks*, applying the make-whole rule to "plan language" that was not "specific and clear in establishing both a priority to the funds recovered and a right to

---

1. QualChoice relies on general principles for interpreting provisions of ERISA plans to argue that the reimbursement provision in this case is not ambiguous. *See generally Perez v. Aetna Life Ins. Co.*, 150 F.3d 550 (6th Cir. 1998) (en banc). This argument would have considerable appeal were it not for the clear and specific holding in *Copeland Oaks*. While we view *Copeland Oaks* as expanding application of the default make-whole rule beyond the holding in *Marshall*, we are bound by it. We note that several circuits have addressed language similar to that at issue in *Copeland Oaks* without finding it to be ambiguous. *See,*

*e.g., Alves v. Silverado Foods, Inc.*, No. 00–5011, 2001 WL 237314, 6 Fed.Appx. 694 (10th Cir. Mar.9, 2001) (provisions giving priority over "any funds" paid by a third party would be sufficient to override make-whole rule; court does not decide whether to adopt default rule); *Paris v. Iron Workers Trust Fund*, No. 99–1558, 2000 WL 384036, 211 F.3d 1265 (4th Cir. Apr.17, 2000) (provision that "any amounts recovered" will be "applied first to reimburse plan" was not ambiguous; court does not adopt make-whole doctrine), *cert. denied*, 531 U.S. 875, 121 S.Ct. 181, 148 L.Ed.2d 125 (2000).

any full or partial recovery," restricted to subrogation clauses. *Id.* at 813.

*Hiney Printing,* 243 F.3d at 959–60.

Without the benefit of these recently published decisions, QualChoice relies instead on several ERISA cases from other circuits that found no ambiguity in similar plan language and refused to apply the make-whole rule. *See Waller v. Hormel Foods Corp.,* 120 F.3d 138 (8th Cir.1997); *Sunbeam–Oster Co. v. Whitehurst,* 102 F.3d 1368 (5th Cir.1996). Although these cases were not discussed in *Copeland Oaks* or *Hiney Printing,* they were acknowledged but not followed by the panel in *Marshall.* Plaintiff also relies on *Electro–Mechanical Corp. v. Ogan,* 9 F.3d 445 (6th Cir.1993), to support its claim that a reimbursement provision is enforceable even though it may exhaust the entire recovery from a third party. The make-whole rule was not discussed in *Ogan,* however. Rather, the plan beneficiary in that case alleged that the plan administrator had breached its fiduciary duty by adopting a reimbursement provision without adequately explaining its meaning and significance. The court held there was no breach of fiduciary duty.

In accordance with *Copeland Oaks* and *Hiney Printing,* we find that the make-whole rule may be applied to reimbursement provisions in employee benefit plans governed by ERISA. Further, there is no question that the reimbursement provision in this case did not establish in specific and clear terms that the Plan had either a priority over any funds recovered or a right to any full or partial recovery. As such, the reimbursement language was sufficiently ambiguous to trigger the make-whole default rule. Since there is no dispute that Williams was not made whole by the $77,000 he received in settlement of his claims against the responsible party, summary judgment was properly entered in his favor.

AFFIRMED.